United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DEBRA S.,[1]
Plaintiff,
v.
KILOLO KIJAKAZI,
Defendant.

Case No. 20-cv-03551-TSH

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 29, 32

## I. INTRODUCTION

Plaintiff Debra S. moves for summary judgment to reverse the decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, denying Plaintiff's claim for disability benefits under the Social Security Act, 42 U.S.C. § 401 et seq. ECF No. 29. Defendant cross-moves to affirm. ECF No. 32. Pursuant to Civil Local Rule 16-5, the matter is submitted without oral argument. Having reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion for the following reasons.[2]

## II. PROCEDURAL HISTORY

On July 28, 2016, Plaintiff filed an application for Social Security Disability Insurance benefits pursuant to Title II of the Social Security Act, with an alleged disability onset date of June

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 5, 11.

1, 2016. AR 9, 260-67. The application was initially denied on November 29, 2016 and again on reconsideration on June 16, 2017. AR 122-26. An Administrative Law Judge ("ALJ") held hearings on September 6, 2018 and February 9, 2019 and subsequently issued an unfavorable decision on May 1, 2019. AR 9-22, 39-90. The Appeals Council denied Plaintiff's request for review on April 15, 2020. AR 28-33. Plaintiff now seeks review pursuant to 42 U.S.C. § 405(g).

## III. ISSUES FOR REVIEW

Plaintiff raises three arguments on appeal: (1) the ALJ improperly addressed the medical opinions; (2) the ALJ "parsed and conflated" Plaintiff's activities of daily living as a means to improperly reject her testimony; and (3) the ALJ's step-four finding is not supported by substantial evidence.

## IV. STANDARD OF REVIEW

42 U.S.C. § 405(g) provides this Court's authority to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). "An ALJ's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019) (simplified). It means "more than a mere scintilla, but less than a preponderance" of the evidence. *Garrison*, 759 F.3d at 1009 (citation omitted).

The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (citation omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id.* at 1010 (citation omitted). If "the evidence can reasonably support either affirming or reversing a decision," the Court may not substitute its own judgment for that of the ALJ." *Id.* (citation omitted).

Even if the ALJ commits legal error, the ALJ's decision will be upheld if the error is

harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111, 1115 (9th Cir. 2012). "[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Id.* at 1115 (simplified). But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Brown-Hunter*, 806 F.3d at 492. The Court is "constrained to review the reasons the ALJ asserts." *Id.* (simplified).

## V. DISCUSSION

### A. Framework for Determining Whether a Claimant Is Disabled

A claimant is considered "disabled" under the Social Security Act if two requirements are met. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that the claimant is unable to perform previous work and cannot, based on age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled. 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citation omitted).

At step one, the ALJ must determine if the claimant is presently engaged in a "substantial gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), defined as "work done for pay or profit that involves significant mental or physical activities." *Ford*, 950 F.3d at 1148 (internal quotations and citation omitted). Here, the ALJ determined Plaintiff had not performed substantial gainful activity since June 1, 2016, the alleged onset date. AR 11.

At step two, the ALJ decides whether the claimant's impairment or combination of impairments is "severe," 20 C.F.R. § 404.1520(a)(4)(ii), "meaning that it significantly limits the

claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148 (quoting 20 C.F.R. § 404.1522(a)). If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined Plaintiff had the following severe impairments: degenerative changes of the cervical and lumbar spine with episodic radiculitis, and episodic myofascial pain. AR 11.

At step three, the ALJ evaluates whether the claimant has an impairment or combination of impairments that meets or equals an impairment in the "Listing of Impairments" (referred to as the "listings"). *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1. The listings describe impairments that are considered "to be severe enough to prevent an individual from doing any gainful activity." *Id.* § 404.1525(a). Each impairment is described in terms of "the objective medical and other findings needed to satisfy the criteria of that listing." *Id.* § 404.1525(c)(3). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (footnote omitted). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets the listings. AR 14.

If the claimant does not meet or equal a listing, the ALJ proceeds to step four and assesses the claimant's residual functional capacity ("RFC"), defined as the most the claimant can still do despite their imitations (20 C.F.R. § 404.1545(a)(1)), and determines whether they are able to perform past relevant work, defined as "work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1). If the ALJ determines, based on the RFC, that the claimant can perform past relevant work, the claimant is not disabled. *Id.* § 404.1520(f). Here, the ALJ determined Plaintiff has the RFC

> to perform work consisting of lifting 20 pounds occasionally; lifting and carrying and [sic] 10 pounds frequently and standing and/or walking 4 hours total [out of] an 8 hour day. The claimant has

> additional nonexertional limitation against climbing ramps and stairs, balancing, stooping, kneeling, crouching, or crawling more than occasionally and is precluded from operating a motor vehicle, from climbing ladders/ropes/or scaffolds, and from any exposure to work hazards such as unprotected heights or dangerous moving machinery.

AR 14. Based on this RFC, the ALJ determined Plaintiff could perform past relevant work. AR 21. As such, the ALJ determined Plaintiff had not been under a disability from June 1, 2016 to the date of the decision, and therefore did not proceed to step five of the analysis.[3]

**B. Medical Opinions**

Plaintiff argues the ALJ improperly addressed the opinions of her treatment physician, Jennifer Haggerty, M.D., and Felicia Radu, M.D., who treated Plaintiff after a work-related injury.

**1. Legal Standard[4]**

In social security disability cases, "[t]he ALJ must consider all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). In this circuit, courts distinguish among the opinions of three types of physicians: (1) treating physicians who have an established relationship with the claimant; (2) examining physicians who see the claimant but do not treat him; and (3) non-examining physicians who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The opinion of a treating physician is entitled to more weight than the opinion of an examining physician, and more weight is given to the opinion of an examining physician than a non-examining physician. *See Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014). Thus, even where a treating or examining physician's opinion is contradicted by another physician's opinion, an ALJ may not reject the opinion without "specific

---

[3] If a claimant cannot perform past relevant work, at step five the burden would shift to the agency to prove that "'the claimant can perform a significant number of other jobs in the national economy.'" *Ford*, 950 F.3d at 1149 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)).

[4] On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844. These final rules were effective as of March 27, 2017. *Id.* Some of the new rules state that they apply only to applications/claims filed before March 27, 2017, or only to applications/claims filed on or after March 27, 2017. *See, e.g.*, 20 C.F.R. § 404.1527 (explaining how an adjudicator considers medical opinions for claims filed before March 27, 2017) and 20 C.F.R. § 404.1520c (explaining how an adjudicator considers medical opinions for claims filed on or after March 27, 2017); *see also* Notice of Proposed Rulemaking, 81 Fed. Reg. 62560, 62578 (Sept. 9, 2016) (summarizing proposed implementation process). Here, Plaintiff filed her claim before the new rules took effect. Accordingly, the rules that state they apply only to applications/claims filed on or after March 27, 2017 do not apply.

and legitimate reasons that are supported by substantial evidence" in the record. *Garrison*, 759 F.3d at 1012 (internal quotations and citation omitted); *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted). "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison*, 759 F.3d at 1012 (quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)); SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996).

The "substantial evidence" standard requires an ALJ to "set[ ] out a detailed and thorough summary of the facts and conflicting clinical evidence, stat[e] his [or her] interpretation thereof, and mak[e] findings." *Reddick*, 157 F.3d at 725 (citation omitted). Conclusory statements by the ALJ are insufficient; he or she "must set forth his [or her] own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citation omitted). An ALJ errs if he or she "does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another[.]" *Garrison*, 759 F.3d at 1012 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

**2. Analysis**

**a. Dr. Haggerty**

Dr. Haggerty is a family practitioner who treated Plaintiff and provided a Medical Source Statement dated April 2018. AR 1497-1501. On November 18, 2015, Dr. Haggerty noted Plaintiff had neck and back pain after a car accident and ordered MRIs. AR 572. An MRI of Plaintiff's lumbar spine on January 19, 2016 showed mild multilevel degenerative changes. AR 435-36. Dr. Haggerty noted on July 21, 2016 that Plaintiff complained of worsening neck pain. AR 699. Dr. Haggerty wrote a letter excusing Plaintiff from work through September 19. AR 702. On September 28, 2016, Dr. Haggerty noted that Plaintiff complained of ongoing numbness in her toe and left hand, and that she had pain in her neck, left shoulder, and lower back. AR 2650. Dr. Haggerty opined that Plaintiff's diagnosis was cervical disc disease with myelopathy and that she could not work for the next six months. AR 2655.

Plaintiff's MRI of the lumbar spine from April 2018 showed increased lumbar lordosis but only mild degenerative changes with no narrowing of the canal or neural foramen and specifically

noted "similar appearance to the prior study." AR 1506 (comparing 2016 lumbar spine MRI). Plaintiff's cervical MRI performed in June 2018 showed mild changes. AR 1920 ("No acute bony abnormality seen. No intrinsic cord signal abnormality. There are multilevel degenerative changes, with varying degrees of disc osteophyte complex, uncovertebral hypertrophy, and facet arthropathy").

On the April 2018 medical source statement, Dr. Haggerty opined that Plaintiff could only sit and stand for 15 minutes at a time and for less than 1 hour total in an 8-hour day. AR 1498-99. She further opined that Plaintiff could occasionally lift less than 10 pounds, rarely lift 10 pounds, and never lift 20 pounds or more. AR 1499. She opined that Plaintiff could rarely climb ladders, occasionally climb stairs, rarely crouch or squat, and occasionally stoop or twist. AR 1500. Dr. Haggerty further opined that Plaintiff would be absent from work more than four days per month. *Id.*

The ALJ gave little weight to Dr. Haggerty's opinion, finding it was "largely conclusory with little or nothing in the way of explanation, rationale, or objective support for the extreme limitations it imposes." AR 20. While Plaintiff alleged disabling physical conditions, the ALJ found that objective evidence did not support that contention, noting "only mild diagnostic abnormalities relevant to the cervical and lumbar spine and occasional modest abnormalities on musculoskeletal and neurological examination" *Id.*

Plaintiff argues the evidence of record does not tie-out with the ALJ's decision, as the record shows she "receive[d] epidural steroid injections on several occasions and has been set up for acupuncture treatment in the future." Pl.'s Mot. at 7. While Plaintiff argues this shows that objective testing supported Dr. Haggerty's opinion, the record shows otherwise. Plaintiff's MRI of the lumbar spine from April 2018 showed increased lumbar lordosis but only mild degenerative changes with no narrowing of the canal or neural foramen and specifically noted "similar appearance to the prior study." AR 1506; *compare* AR 1999 (2016 lumbar spine MRI). Plaintiff's cervical MRI performed in June 2018 also showed only mild changes. AR 1920 ("No acute bony abnormality seen. No intrinsic cord signal abnormality. There are multilevel degenerative changes, with varying degrees of disc osteophyte complex, uncovertebral

hypertrophy, and facet arthropathy"). The ALJ also noted that "examinations performed by Dr. Haggerty, a family practitioner, were cursory and typically either normal or only minimally abnormal." AR 20.

Moreover, the ALJ found that Dr. Haggerty's opinion was "inconsistent with the claimant's reported activities of daily living and receipt of only conservative treatment." AR 20. "An ALJ may accord less weight to a doctor's opinion that is inconsistent with the examination findings, a claimant's own reports, and the treatment records." *Robert B. v. Kijakazi*, 2022 WL 425358, at *6 (N.D. Cal. Feb. 11, 2022) (citing 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). The record shows that Plaintiff's treatment was mainly comprised of physical therapy, acupuncture, and medications such as ibuprofen, flexeril, and gabapentin. *See, e.g.*, AR 410, 448-558, 1491, 1744, 2053; *see Jones v. Astrue*, 499 Fed. App'x 676, 677 (9th Cir. 2012) ("[T]he record supports the ALJ's decision not to give controlling or great weight to Dr. Johnson's opinion because the ALJ reasonably found that the treatment notes reflecting a conservative course of treatment provided little in the way of support for Dr. Johnson's conclusory statement regarding Jones's ability to work") (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)).

As to activities of daily living, Plaintiff reported that she performs all her own grooming and self-care as well as household chores such as cooking, cleaning, and laundry. AR 1492. The ALJ properly considered these activities when assigning weight to Dr. Haggerty's opinion and found that they were inconsistent with the restrictive functional limitations she assessed. *See, e.g.*, *Thomas*, 278 F.3d at 958-59 ("The ALJ also found that [the claimant] was able to perform various household chores such as cooking, laundry, washing dishes, and shopping," which suggested the ability to perform a reduced range of light work).

Finally, the ALJ properly considered other medical opinions of record that contradicted Dr. Haggerty's opinion. *See* 20 C.F.R. § 404.1527(c)(6) ("When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion"). State agency medical

consultant H.M. Estrin, M.D. and examining orthopedist Omar Bayne, M.D., reviewed the records and determined Plaintiff could perform a range of light work with additional limitations. AR 1478-79. After his examination, Dr. Bayne opined that Plaintiff could stand and walk for four hours during an eight-hour workday, sit for six hours during an eight-hour workday, and lift and carry 10 pounds frequently and 20 pounds occasionally. AR 1479. Dr. Bayne also opined that Plaintiff was limited to occasional bending, twisting, crouching, crawling, stooping, kneeling, climbing up and down stairs, inclines, ramps or ladders, but should be able to work in any work environment except on unprotected heights. AR 1479. Dr. Estrin similarly opined that Plaintiff could stand and walk for 4 hours in an 8 hour day, sit for 6 hours in a day, lift and carry 10 pounds frequently and 20 pounds occasionally. AR 116-19. Dr. Estrin also opined that Plaintiff would have postural limitations. AR 116-17. The ALJ explained that she assigned these opinions the greatest weight because they were "mutually supporting and well supported by the objective medical evidence present in the record and outlined above and by the other evidence present in the record as a whole." AR 19.

In sum, the Court finds the ALJ reasonably gave "little weight" to Dr. Haggerty's opinion as it was inconsistent with the overall objective evidence and with evidence showing Plaintiff's conservative treatment and activities of daily living. Further, even where the record contains conflicting medical evidence, "the ALJ is charged with determining credibility and resolving the conflict . . . ." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012); *see also Thomas*, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record"); 20 C.F.R. § 404.1513a(b)(1) ("State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation.").

Accordingly, the Court finds the ALJ properly evaluated Dr. Haggerty's opinion, and the ALJ's decision must be affirmed.

United States District Court
Northern District of California

**b. Dr. Radu**

Dr. Radu examined Plaintiff in August 2016 after a work-related injury.[5] AR 1462-67. Dr. Radu performed a physical examination and opined she could return to work with restrictions. AR 1466 ("released to work with modified duty. No overhead work. Limited lifting, pulling, and pushing 10 pounds. 5-10 minutes stretch break every 50 or 60 minutes as needed and to use a height adjustable desk.").

Similar to Dr. Haggerty, the ALJ assessed Dr. Radu's findings and found them "contradicted by the objective medical evidence," including Dr. Radu's own exam findings, contradicted "by the claimant's receipt of only conservative treatment," and not supported by Plaintiff's "longitudinal clinical presentations notable for consistently and repeatedly normal neurological examinations." AR 20. The ALJ therefore concluded that Dr. Radu based her opinion largely on Plaintiff's subjective statements, which the ALJ properly chose not to adopt. *See Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995) (ALJ entitled to discount doctor's assessments that are based on the claimant's own reports of the severity of her condition) (citing *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (finding that an opinion of disability "premised to a large extent upon the claimant's own accounts of his symptoms and limitations" may be disregarded where those complaints have been "properly discounted"). Further, as noted above, the ALJ properly considered other medical opinions of record that contradicted Dr. Radu's opinion, including Drs. Estrin and Bayne. Thus, as with Dr. Haggerty, the Court finds the ALJ reasonably gave "little weight" to Dr. Radu's opinion as it was inconsistent with the overall objective evidence and with evidence showing Plaintiff's conservative treatment and activities of daily living. Accordingly, the Court finds the ALJ properly evaluated Dr. Radu's opinion, and the ALJ's decision must be affirmed.

**C. Plaintiff's Testimony**

The ALJ evaluated Plaintiff's subjective symptom testimony and found that her allegations

[5] In her motion, Plaintiff characterizes Dr. Radu as her ongoing "pain management specialist," but a review of the record shows that Dr. Radu examined Plaintiff in August 2016 as part of her worker's compensation claim. There does not appear to be any evidence of ongoing treatment unrelated to that claim.

were not entirely consistent with the objective medical evidence and other evidence in the record, including her activities of daily living. AR 15-16. Plaintiff argues the ALJ "parsed and conflated" her activities of daily living as a means to improperly reject her testimony. Pl.'s Mot. at 9. Plaintiff argues the record establishes she cannot sustain activity for a full workday and work week, and the ALJ failed to describe any activities which are actually performed in a manner inconsistent with the limitations she described. *Id.* at 12.

**1. Legal Standard**

"In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. 'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). And second, "if the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection." *Vasquez*, 572 F.3d at 591 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). "At the same time, the ALJ is not required to believe every allegation of [symptoms], or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina*, 674 F.3d at 1112 (citation and internal quotations omitted). Along the same lines, "an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability." SSR 16-3p, 2016 WL 1119029, at *2.

In determining whether an individual's symptoms will reduce her capacities to perform work-related activities or abilities to function, "the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct; unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Molina*, 674 F.3d at 1112 (citations and internal quotation marks omitted). "[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the

objective medical evidence and the other evidence, [the ALJ] will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner." SSR 16-3p, 2016 WL 1119029, at *7.

**2. Analysis**

The Court finds the ALJ properly evaluated Plaintiff's subjective testimony. First, the Court notes the ALJ did not reject all of Plaintiff's statements and included many of the alleged limitations in limiting her to a reduced range of light work. AR 14. In accord with the regulations, the ALJ must consider how consistent Plaintiff's statements are with the objective medical evidence. AR 15-16; 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work. We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled.). Although it can't be the ALJ's sole reason for rejecting Plaintiff's statements about symptoms, it is a relevant factor that she was required to consider. 20 C.F.R. § 404.1529(c)(2).

The ALJ found Plaintiff's complaints were not fully supported by the medical evidence of record. AR 15-16. Notably, Plaintiff does not argue this consideration with any specificity and instead focuses on the ALJ's finding that her activities of daily living were inconsistent with her subjective statements. Pl.'s Mot. at 11 ("The ALJ cited the objective medical evidence, generally, as contradicting [Plaintiff's] alleged limitations, but identified no particular findings inconsistent with any of the specific functional deficits [Plaintiff] described."). However, the ALJ provided a summary of the medical evidence in support of this finding, including the findings of the State agency physicians, consultative examiner, and other opinions in the record. AR 15-21. The ALJ found Plaintiff's "general allegations of disabling neck pain, back pain, and upper and lower extremity radicular pain [were] not consistent with the objective medical evidence." AR 16; *see Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (upholding ALJ's symptom evaluation where ALJ found claimant's allegations as to the intensity, persistence and limiting

effects of symptoms were disproportionate and not supported by objective medical findings, medical source opinions, and daily activities); SSR 16-3p, 2017 WL 5180304, at *7 ("We must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record."). The Court finds the ALJ's consideration of this objective medical evidence was appropriate, and she reasonably concluded that the overall objective medical evidence demonstrated that Plaintiff's abilities were not significantly and persistently diminished throughout the relevant period to preclude her from work activity altogether. AR 15; *see Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (ALJ properly discounts the claimant's allegations based in part on lack of corroboration by objective diagnostic studies); *accord Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001).

In addition to the inconsistent medical evidence in the record, the ALJ found that other factors detracted from Plaintiff's subjective allegations of disability. As explained in the regulations, after considering the objective medical evidence, the ALJ considers whether and to what extent the claimant's subjective statements are consistent with "other evidence" in the record. 20 C.F.R. § 404.1529(c)(3). This other evidence may include the claimant's daily activities, medications, other measures used to alleviate symptoms, and any "other factors" that the ALJ deems relevant. 20 C.F.R. § 404.1529(c)(3)(i)-(vii). Here, the ALJ considered Plaintiff's conservative treatment, such as physical therapy, acupuncture, and prescribed medications such as ibuprofen, flexeril, and gabapentin. AR 16 (citing AR 410, 448-558, 1491, 1744, 2053). "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (conservative treatment suggests "a lower level of both pain and functional limitation.")); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (subjective pain complaints properly discredited where claimant received "minimal" and "conservative" treatment). Plaintiff argues her treatment was not conservative because she had epidural shots, Pl.'s Mot. at 12, but she fails to mention this treatment occurred three and four years prior to the relevant period. AR 376, 379 (epidural shots received in 2012 and 2013).

During the relevant period for this claim, there is no evidence that Plaintiff received epidural shots. *Osenbrock*, 240 F.3d at 1166 (claimant not credible where he "has not participated in any significant pain regimen or therapy program").

The ALJ also explained that Plaintiff's daily activities—which included household chores such as cooking, cleaning, and laundry, and performing her own personal grooming and hygiene—were inconsistent with a finding of disabling limitations. AR 12, 15-16, 1492; *see* 20 C.F.R. § 404.1529(c)(3)(i); *Molina*, 674 F.3d at 1112-13 (ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms"). Plaintiff argues these activities do not show that she can perform full-time work. Pl.'s Mot. at 12. However, the ALJ explained that Plaintiff's activities were inconsistent with the extent of her alleged symptoms, which is a permissible consideration. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (ALJ properly determined that the claimant's daily activities "did not suggest [the claimant] could return to his old job. . . , but . . . did suggest that [the claimant's] later claims about the severity of his limitations were exaggerated"); *Molina*, 674 F.3d at 1113 ("Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

In sum, the Court finds the ALJ properly discounted Plaintiff's subjective complaints to the extent her alleged limitations were not already accommodated by the stated RFC. Further, even if the Court were to disagree with one of the above reasons, the ALJ provided other specific, independent, and well supported bases for discounting Plaintiff's allegations, and her finding must therefore be upheld. *See Carmickle v. Comm'r*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (upholding the ALJ's overall credibility finding even though two of the credibility factors the ALJ considered were found invalid); *Batson v. Comm'r Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (even if one of the ALJ's reasons for discrediting testimony is found invalid, her decision must still be upheld if otherwise supported by substantial evidence). Where, as here, the ALJ's findings are rational and supported by substantial evidence in the record, the decision should not be second-guessed. *See Thomas*, 278 F.3d at 959. Accordingly, the Court must affirm.

United States District Court
Northern District of California

**D. Step Four**

With regard to the ALJ's step four finding, Plaintiff argues the hypothetical question to the vocational expert ("VE") did not contain all the relevant limitations, and the VE's responses therefore had "no evidentiary value" Pl.'s Mot. at 13. Plaintiff does not specify which limitations the ALJ failed to include, but she argues "the ALJ improperly omitted from the vocational hypothetical [Plaintiff's] credible allegations and the limitations assessed by [Plaintiff's] treating doctor, Dr. Zonner."[6] *Id.* "However, there is no requirement for the RFC to include those limitations the ALJ found to be unsupported by the evidence of record." *Pamela M. v. Kijakazi*, 2021 WL 4461546, at *13 (N.D. Cal. Sept. 29, 2021) (citing *Bayliss*, 427 F.3d at 1217 (reasoning the "hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record," the "ALJ's reliance on testimony the VE gave in response to the hypothetical therefore was proper").

Further, the Court finds Plaintiff's step four argument is derivative of her prior arguments and fails for the same reasons. *See also Stubbs-Danielson*, 539 F.3d at 1176-77 (plaintiff's argument that the hypothetical questions were incomplete "simply restates her argument that the RFC did not account for all her limitations" based on subjective testimony and alternative medical evidence). As explained above, the ALJ properly evaluated Plaintiff's subjective statements and the medical opinion evidence from Dr. Haggerty and Dr. Radu, and she gave sufficient reasons for discounting those assessments. Because the hypothetical question posed to the VE and upon which the ALJ ultimately relied included the limitations that the ALJ found supported by substantial evidence in the record, no error occurred. *See Bayliss*, 427 F.3d at 1218 (ALJ properly relied on VE testimony where "[t]he hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record"); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("the ALJ did not err in omitting the other limitations that [claimant] had claimed, but had failed to prove"). As the ALJ permissibly discounted the limitations that Plaintiff contends should have been included in the RFC, the Court

[6] This is the only reference Plaintiff makes to a "Dr. Zonner" and is possibly the result of a copy-and-paste error. The Court assumes Plaintiff is referring to Dr. Haggerty.

United States District Court
Northern District of California

must affirm.

## VI. CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion. The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: October 11, 2022

THOMAS S. HIXSON
United States Magistrate Judge